IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KAIRA SHONDELL HARRISON,<br><br>Plaintiff,<br><br>vs.<br><br>DHO MARK HARTMAN, NIA STANDS OVER BULL, FORMER WARDEN JENNIE HANSEN, FORMER ASSOCIATE WARDEN MORMON,<br><br>Defendants. | CV 24–113–BLG–DWM<br><br>ORDER |

Plaintiff Kaira Harrison has filed a second amended civil rights complaint under 42 U.S.C. § 1983, alleging Defendants—former Warden Jennie Hansen, former Associate Warden Mormon, and Hearings Officer Mark Hartman of the Montana Women's Prison in Billings, Montana—violated her constitutional rights by failing to adequately investigate or adjudicate an altercation with a fellow inmate that resulted in Harrison being disciplined under the Prison Rape Elimination Act ("PREA"). (*See* Doc. 9.) Harrison also alleges that Defendant Nia Stands Over Bull, a fellow inmate, made false accusations against her that led to her disciplinary proceedings. (*See id.*) Because Harrison fails to state a

1

cognizable constitutional claim, her Second Amended Complaint is dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## ANALYSIS

### I.   Prescreening

Because Harrison is proceeding in forma pauperis, (*see* Doc. 4), her second amended complaint must be reviewed under 28 U.S.C. § 1915(a)(1). A court is required to dismiss a complaint filed in forma pauperis before the complaint is served if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Id.* § 1915(e)(2)(B). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

To proceed to the merits, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no

cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted). Nevertheless, *pro se* pleadings are construed liberally to "afford the petitioner the benefit of any doubt." *Watison*, 668 F.3d at 1112 (internal quotation marks omitted); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

## II.  Claims

On November 25, 2024, Harrison filed her Seconded Amended Complaint. (Doc. 9.) Although the substantive facts are still lacking, Harrison alleges that she was charged with a "PREA violation" based on the false report of Stands Over Bull that resulted in her being found guilty. (*See id.* at 5.) Her description of the facts underlying the disciplinary proceeding is limited to the following:

> Me and two other inmates were in cell 203 tattooing all night laughing and having fun no problems arose until approx. 7/12 Stands Over Bull went to the hole for fighting with her girlfriend Approx. 7/14 I went to the hole pending PREA investigation and received my write up on the 7/17 and had my hearing two days later with a guilty result on 7/19.

(*Id.* at 4.) As it relates to the "PREA investigation," Harrison alleges that Hansen, Mormon, and Hartman ignored the fact that the "PREA investigators" found no violations, she was not notified of all the evidence against her, and she was found guilty "without substantial evidence." (*Id.* at 4, 5.) She also alleges that she attempted to hang herself following the guilty decision and that she received no

3

medical care. (*Id.* at 5.) She seeks to have her "predator" status removed, to see Stands Over Bull charged for filing a false allegation, and for the facility to implement a policy addressing false allegations in the PREA context. (*Id.*) She also seeks $150,000 in punitive damages. (*Id.*) While she did not file any grievances, it appears she appealed her PREA decision from the hearings officer to the assistant warden and warden. (*Id.* at 5, 8.)

## III. Analysis

Section 1983 confers a tort remedy upon individuals "whose constitutional rights have been violated by state officials acting 'under color of' law." *Whalen v. McMullen*, 907 F.3d 1139, 1145 (9th Cir. 2018) (quoting 42 U.S.C. § 1983). Consistently, "[t]o state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (internal quotation marks omitted). Here, Harrison appears to seek damages and injunctive relief for alleged violations of due process in the context of a PREA investigation that resulted in a guilty finding and changes to her prison status. Harrison fails to state a claim.

### A. Stands Over Bull

As indicated in this Court's previous screening order, § 1983 is limited to cases against state officials acting "under color of" law. *See id.* Accordingly, Harrison cannot maintain a § 1983 claim against a fellow inmate such as Stands Over Bull. Thus, her claims against Stands Over Bull are dismissed with prejudice.

### B.     Due Process – PREA Proceedings

PREA does not create a private right of action that can be brought by an individual plaintiff. Thus, to the extent Harrison's allegations are premised on any violation of PREA, they fail to state a claim for relief. *See* 42 U.S.C. § 15607(e). Moreover, to the extent Harrison is asserting a due process violation for a false report, an "inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *see also Paul v. Davis*, 424 U.S. 693, 701 (1976) (harm to reputation alone is not "by itself sufficient to invoke the procedural protection of the Due Process Clause"). Any such claim therefore also fails as a matter of law. Accordingly, the question is whether Harrison has plausibly alleged that she was denied due process in the disciplinary process. *See Freeman*, 808 F.2d at 951 ("The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law.").

5

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, a due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered. *See Bd. of Regents of St. Colls. v. Roth*, 408 U.S. 564, 569 (1972). The Supreme Court has held that prisoners have "no liberty interest in freedom from state action taken within the sentence imposed unless such action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied due process." *Ramirez v. Galaza*, 334 F.3d 850, 860–61 (9th Cir. 2003). A court may consider the following factors in determining whether a prison hardship is atypical and significant: "1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Id.* at 861.

Harrison first alleges that she was placed "in the hole pending PREA investigation." (Doc. 9 at 4.) In this context, The only procedures that due process requires are that: "(1) 'an informal nonadversary hearing' be held 'within a reasonable time after the prisoner is segregated'; (2) the prisoner be informed of the charges against him or the prison officials' 'reasons for considering segregation'; and (3) the prisoner be allowed 'to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.'" *Burton v. Wilkie*, 2024 WL 1975391, at *6 (W.D. Wash., Feb. 23, 2024) (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1101 (9th Cir. 1986)). As alleged by Harrison, she was placed in administrative segregation on July 14, she received a written description of the charges against her on July 17, and she had a hearing on July 19, wherein she was found guilty. (*See* Doc. 9 at 4.) Accordingly, Harrison fails to state a claim for any due process violation based on her being held in administrative segregation pending the outcome of her disciplinary proceeding.

As it relates the disciplinary proceeding itself, Harrison's claims remain vague. Taken as true, however, her pleadings establish that there was both a PREA investigation and a disciplinary hearing and that, as a result, Harrison's status was changed. (*See* Doc. 9 at 4.) It is unclear what additional process Harrison believes should have occurred. Fundamentally, Harrison alleges that her constitutional rights were violated because she was found guilty at all stages of a disciplinary

7

proceedings despite her belief to the contrary and, allegedly, the PREA investigation report to the contrary. (*See* Doc. 9 at 4.) But due process does not guarantee a particular outcome; rather, it requires adequate notice and hearing prior to a liberty restriction. *See Wolff*, 418 U.S. at 564–67. Harrison has neither alleged such a denial or that her resulting punishment was an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Hernandez v. Johnson*, 833 F.2d 1316, 1318 (9th Cir. 1987) ("[A] state prisoner does not have a liberty interest in a particular classification status.").

Because Harrison fails to plausibly allege a procedural due process claim[1] associated with her disciplinary proceeding despite multiple opportunities to do so, no further opportunities to amend will be given.

## CONCLUSION

Based upon the foregoing, IT IS ORDERED that:

---

[1] Harrison also states in her Second Amended Complaint that she attempted to hang herself after the disciplinary proceeding and that "no pictures were taken" and she "was not acknowledge [sic] by medical or mental health." (Doc. 9 at 5.) This was not pled as a distinct claim and has therefore not been assessed as such. To the extent it could be read as an individual claim, Harrison must specifically identify which individual actors were involved in the deprivation of his rights and the specific actions that were taken. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The current pleading does neither.

1. Harrison's Second Amended Complaint is DISMISSED WITH PREJUDICE. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

2. The Clerk of Court is directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3. The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit.

DATED this 17th day of December, 2024.

/s/ Donald W. Molloy
Donald W. Molloy, District Judge
United States District Court